IN THE UNITED STATES DISTRICT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| INTRUST Financial Corporation | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-CV-1093-JTM-KGG |
| | ) | |
| Entrust Companies, LLC | ) | JURY TRIAL REQUESTED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

### STATEMENT OF THE CASE

1. This is an action to recover damages for and halt violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., for relief under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), and for injunctive relief.

### PARTIES

2. INTRUST Financial Corporation ("INTRUST") is a Kansas corporation with its principal place of business in Wichita, Kansas.

3. Defendant Entrust Companies, LLC ("Entrust") is a limited liability company organized in the State of Arizona. Entrust may be served through its Arizona Statutory Agent, Entrust Companies, LLC, c/o Osborn Maledon PA, 2929 N. Central Avenue, #1200, Phoenix, Arizona, 83012

4. On information and belief, Entrust was formed in 2006.

### JURISDICTION AND VENUE

5. This action arises under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a) and (b).

6. Venue is proper in this district under 28 U.S.C. §1391.

## FACTUAL BACKGROUND

7. INTRUST is a leading provider of a wide variety of banking and financial services including, without limitation, mortgage loans, credit cards services, banking card services, ATM services, merchant processing services, savings and checking accounts, and investment wealth management.

8. INTRUST was originally chartered in 1876 in Kansas as the Farmers & Merchants Bank, which later became the First National Bank of Wichita, and then in the early 1990s, INTRUST. Since at least 1993, INTRUST has been using the "INTRUST" trade name, both alone and in combination with other words, graphics, and logos, to identify its banking and financial services to potential customers.

9. To further preserve and enhance the recognition and goodwill associated with the "INTRUST" brand, INTRUST has registered both the "INTRUST" service mark and its related trademarks on the Principal Register with the U.S. Patent and Trademark Office ("PTO") based on INTRUST's use of said marks in conjunction with various financial services. INTRUST's federally registered rights are evidenced by the following U.S. trademark registrations (collectively, the "INTRUST Registrations" and the "INTRUST Federally Registered Marks"):

   a. Registration No. 1,802,917, for the mark "INTRUST" for use with banking services, which was based on the application filed on July 30, 1992, and which was registered on November 2, 1993;

   b. Registration No. 1,832,427 for the mark "INTRUST 24 HOUR BANKING" for use with banking services, which was based on the application filed on January 12, 1993, and which was registered on June 8, 1993;

c. Registration No. 1,840,083 for the mark "INTRUST BANK, N.A.", for use with banking services, which was based on the application filed on March 18, 1993, and which was registered on June 14, 1994;

d. Registration No. 1,841,487 for the mark "INTRUST BANK" for use with banking services, which was based on the application filed on January 12, 1993, and which was registered on June 21, 1994;

e. Registration No. 1,849,586 for the mark "INTRUST FINANCIAL CORPORATION" for use with banking services, which was based on the application filed on February 12, 1993, and which was registered on August 9, 1994;

f. Registration No. 1,879,319 for the mark "INTRUST CARD CENTER" for use with banking services, namely credit card services, which was based on the application filed on January 12, 1993, and which was registered on February 14, 1995;

g. Registration No. 1,957,654 for the mark "INTRUST CHECK CARD" for use with banking card services, specifically on line debit card, which was based on the application filed on February 22, 1995, and which was registered on February 20, 1996;

h. Registration No. 2,197,748 for the mark "I INTRUST BANK" (stylized + design) for use with banking services, which was based on the application filed on July 21, 1997, and which was registered on October 20, 1998;

i. Registration No. 2,738,638 for the mark "INTRUST MERCHANT SERVICES" for use with merchant services, namely, credit card and debit card services, which

was based on the application filed on January 11, 2002, and which was registered on October 29, 2002;

j. Registration No. 3,219,237 for the mark "INTRUST VALUE PACK" for use with non-commercial banking service, namely, upgraded checking account services, which was based on the application filed on January 30, 2004, and which was registered on March 20, 2007;

k. Registration No. 3,358,359 for the mark "INTRUST WEALTH MANAGEMENT" for use with financial services, namely, management of trusts and investment accounts, which was based on the application filed on August 31, 2006, and which was registered on December 25, 2007; and

l. Registration No. 3.711,317 for the mark "I TRUST INTRUST" for use with banking services, and which was registered on November 17, 2009.

10. INTRUST is a leader in the financial services industry. It is highly regarded by its clients and peers for its customer service and personalized banking.

11. Currently, INTRUST has more than 45 branch offices in Kansas, Oklahoma and Arkansas, and is the largest independent bank headquartered in Kansas. It also offers credit and debit card payment processing services and payment services via mobile devices.

12. INTRUST has spent substantial sums to further enhance consumer recognition and goodwill in the "INTRUST" brand. In 2008, INTRUST agreed to pay $8.75 million to Sedgwick County, Kansas, in exchange for naming rights to a 15,000 seat multi-purpose arena located in Wichita, Kansas. The "INTRUST BANK ARENA" is known throughout Kansas and Oklahoma as a state-of-the-art sports and entertainment venue. INTRUST also owns U.S.

Registration Nos. 3,998,705 and 3,998,706 for the "INTRUST BANK ARENA" (stylized + design) and the "INTRUST BANK ARENA" (standard character) marks, respectively.

13.     As a result of INTRUST's extensive efforts to promote the "INTRUST" brand and the exceptional services that it offers to its customers, there is significant consumer recognition and goodwill associated with INTRUST's trade name and related trademarks.

14.     Entrust offers credit and debit card payment processing services and financial transaction services, including, not by way of limitation, providing secure commercial transactions and payment options using mobile device at point of sale services, loyalty program payment processing services, incentive award programs to promote the sale of products and services of others, ATM services, and magnetic coded gift cards.

15.     On March 25, 2011, Entrust filed U.S. Trademark Application Serial No. 85/277145 for the following mark for use in association with "Credit and debit card payment processing services; Financial transaction services, namely, providing secure commercial transactions and payment options using a mobile device at a point of sale; Loyalty program payment processing services":



(the "Entrust Composite Mark").  The application claimed use of the Entrust Composite Mark as early as November 16, 2010.

16. On June 24, 2011, the PTO issued an office action letter (the "Office Action") in which the PTO stated, among other things, that the application to register the Entrust Composite Mark is refused because of a likelihood of confusion with several INTRUST marks; specifically, the INTRUST CARD CENTER mark, Reg. No. 1,879,319; the INTRUST CHECK CARD mark, Reg. No. 1,957,654; and the INTRUST MERCHANT SERVICES mark, Reg. No. 2,738,638.

17. On December 8, 2011, Entrust responded to the Office Action, arguing, among other things, that there is no likelihood of confusion between the Entrust Composite Mark and the INTRUST marks because the respective services offered are offered to different customers.

18. The PTO was not convinced with Entrust's arguments and, on December 27, 2011, the PTO issued a suspension notice (the "Suspension Notice") to Entrust. The Suspension Notice provides, among other things, that the examining attorney is suspending the application for the Entrust Composite Mark based upon a likelihood of confusion with several INTRUST marks; specifically, the INTRUST CARD CENTER mark, Reg. No. 1,879,319; the INTRUST CHECK CARD mark, Reg. No. 1,957,654; and the INTRUST MERCHANT SERVICES mark, Reg. No. 2,738,638.

19. By letter of March 15, 2012, shortly after becoming aware of Entrust's infringing use of the Entrust Composite Mark, INTRUST notified Entrust of its rights and demanded: (a) that Entrust cease all further use of the "ENTRUST BANKCARD" mark or any other confusingly similar mark, including, not by way of limitation, the <entrustbankcard.com> domain name on the website associated therewith and in all references and links; (b) that it recall and destroy all advertising materials bearing the infringing mark; and (c) that it abandon its federal trademark application for the Entrust Composite Mark.

20. By letter dated April 2, 2012, counsel for Entrust responded by stating she had been out of the office, she will address the issues raised by INTRUST with Entrust and she will be in touch thereafter.

21. On April 27, 2012, counsel for INTRUST sent an e-mail to counsel for Entrust, in which counsel for INTRUST stated he was following up a brief telephone call a couple weeks prior about INTRUST's demand letter to Entrust and about Entrust wanting a transition period to transition out of the "Entrust" mark. The e-mail further stated, in the interest of amicably resolving the dispute, INTRUST was willing to agree to up to a six month transition period on the condition that not later than three months Entrust must notify INTRUST of Entrust's proposed mark, which must be reasonably acceptable to INTRUST based on whether there is a likelihood of confusion with INTRUST's marks and, if this is generally acceptable, INTRUST's counsel could prepare a short agreement for review.

22. On May 22, 2012, counsel for INTRUST sent another follow up e-mail to counsel for Entrust, stating that counsel for INTRUST had not received a response to the April 27, 2012 email.

23. On May 25, 2012, counsel for Entrust responded by e-mail, stating that she had been in touch with Entrust, they are working on a plan, and she would provide information when she hears back from Entrust.

24. On May 25, 2012, counsel for INTRUST sent an e-mail to counsel for Entrust asking for an estimate of when the plan would be received.

25. On May 25, 2012, counsel for Entrust responded, stating that she already asked for that timeline and will let counsel for INTRUST know when she receives the same.

26. On September 13, 2012, counsel for INTRUST sent another e-mail to counsel for Entrust asking about the status of Entrust's plan to stop using the "Entrust" mark.

27. On September 13, 2012, counsel for Entrust responded and said that she would check with Entrust to get a status update, and that the new name Entrust would use is not relevant if different from "Entrust" and not likely to be confused with the INTRUST mark.

28. On September 18, 2012, counsel for Entrust sent an e-mail to counsel for INTRUST, stating that Entrust informed her that it has ceased to do additional business as Entrust Bankcard, although there may be some residual business which will phase out over time despite Entrust's best novation efforts.

29. On September 19, 2012, counsel for INTRUST sent an e-mail to counsel for Entrust with several questions raised by the September 18, 2012 e-mail from counsel for Entrust. The questions included a request for more detail concerning the novation efforts, whether existing contracts specifically required the use of the term "Entrust," and whether Entrust formed a new entity or only changed the "Entrust" mark.

30. Having received no response to the September 19, 2012 e-mail, counsel for INTRUST sent a follow up e-mail to counsel for Entrust on October 9, 2012.

31. On October 12, 2012, counsel for Entrust responded in an e-mail that stated Entrust has ceased operating as and marketing any new business under the "Entrust" name and is converting all legacy Entrust Bankcard customers to a new legal entity.

32. Despite the October 12, 2012 e-mail from counsel for Entrust, Entrust had not taken down its website at <entrustbankcard.com> and had not taken down its Facebook page, both of which prominently feature the "Entrust" mark and the Entrust Composite Mark and which solicit customers. Also, Entrust had not abandoned its federal trademark application.

8

33. Entrust's use of the "Entrust" mark and the Entrust Composite Mark have caused damage to the reputation of INTRUST and the INTRUST marks. On or about May 20, 2011, the Better Business Bureau revoked accreditation of Entrust and gave it an "F" rating.

34. In addition to using the term "Entrust" in the Entrust Composite Mark, Entrust uses the singular term "Entrust" and the domain name <entrustbankcard.com> to identify itself as the source of its financial services. The Entrust website uses the <entrustbankcard.com> domain name and stated that "Entrust's Swipe Safe Program is here to help!" and "Entrust can help you build and execute a cost-effective program that not only encourages your customers to spend more, but gets your brand noticed by new customers as well."

35. Entrust's use of the "Entrust" mark, the <entrustbankcard.com> domain name, and the Entrust Composite Mark, whether alone or in combination with other terms or designs, in conjunction with the offering of its financial services is likely to cause confusion, mistake, or deception of the public.

36. Entrust's acts have been committed willfully and with full knowledge of INTRUST's rights and with the intention of confusing, deceiving, and misleading the public and wrongfully trading upon INTRUST's goodwill and reputation.

## COUNT I

37. The allegations set forth in paragraphs 1 through 36 are incorporated herein by reference.

38. Entrust's use of the "Entrust" mark and the <entrustbankcard.com> domain name, both alone and with other words or designs, in conjunction with the advertising and sale of Entrust's services, without INTRUST's consent or authorization, is likely to cause confusion, or

9

to cause mistake, or to deceive consumers, and constitutes infringement of INTRUST's rights in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

39. Entrust's trademark infringement has caused and will cause INTRUST damage and other irreparable injury for which it does not have an adequate remedy at law.

## COUNT II

40. The allegations set forth in paragraphs 1 through 39 are incorporated herein by reference.

41. Entrust's use of the Entrust Composite Mark in conjunction with the advertising and sale of Entrust's services, without INTRUST's consent or authorization, is likely to cause confusion, or to cause mistake, or to deceive consumers, and constitutes infringement of INTRUST's rights in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

42. Entrust's trademark infringement has caused and will cause INTRUST damage and other irreparable injury for which it does not have an adequate remedy at law.

## COUNT III

43. The allegations set forth in paragraphs 1 through 42 are incorporated herein by reference.

44. Entrust is using, in connection with services in commerce, a word, term, name, symbol, or device, or any combination thereof, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Entrust with INTRUST or as to the origin, sponsorship, or approval of Entrust's services or commercial activities by INTRUST in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

45. Entrust's acts have caused and will cause INTRUST damage and other irreparable injury for which it does not have an adequate remedy at law.

**COUNT IV**

46. The allegations set forth in paragraphs 1 through 45 are incorporated herein by reference.

47. The INTRUST Federally Registered Marks are distinctive. After registration of the INTRUST Federally Registered Marks, Entrust registered the domain name <entrustbankcard.com>. Thereafter, Entrust began using the <entrustbankcard.com> domain name in a manner that both improperly trades on INTRUST's goodwill.

48. By registering and using the <entrustbankcard.com> domain name, Entrust has registered, trafficked in, and used a domain name that is confusingly similar to the INTRUST Federally Registered Marks. On information and belief, Entrust registered the <entrustbankcard.com> domain name with the bad faith intent of profiting unlawfully from the INTRUST Federally Registered Marks.

49. On information and belief, Entrust is using the <entrustbankcard.com> domain name with the bad faith intent to profit from INTRUST Federally Registered Marks by creating a likelihood of confusion as to source.

50. On information and belief, Entrust is deriving profit from the use of the <entrustbankcard.com> domain name and the consequent confusion of internet users because Entrust is offering to sell services through the website operated in connection with the <entrustbankcard.com> domain name.

51. Entrust's actions constitute cyberpiracy in violation of 15 U.S.C. § 1125(d).

52. The unauthorized registration and use of the <entrustbankcard.com> domain name have caused and unless permanently enjoined, Entrust's registration and continued use of

the <entrustbankcard.com> domain name will continue to cause, irreparable injury to INTRUST and to the goodwill associated with the INTRUST Federally Registered Marks.

53. Because Entrust's infringing conduct is causing and likely to cause substantial injury to INTRUST, INTRUST is entitled to proceed to obtain transfer of the <entrustbankcard.com> domain name and to damages as permitted by law.

## PRAYER FOR RELIEF

WHEREFORE INTRUST respectfully prays that:

A. Entrust's infringement and unfair competition be found to have violated § 32 of the Lanham Act, 15 U.S.C. § 1114, and § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

B. The Court order Entrust to withdraw and abandon Entrust's federal trademark application for the Entrust Composite Mark.

C. Entrust and its officers, agents, servants, employees, members, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, be preliminary and permanently enjoined from:

1. using the name "Entrust" or any term, script, or device confusingly similar thereto, in connection with the offering of any type of financial service in the United States;

2. using the Entrust Composite Mark or any term, script, or device confusingly similar thereto, in connection with the offering of any type of financial service in the United States;

3. using in commerce any word, term, name, symbol, or device, or any combination thereof, which is likely to cause confusion, mistake, or deception as to the

affiliation, connection, or association of Entrust with INTRUST or as the origin, sponsorship, or approval of Entrust's services by INTRUST; and

        4.      assisting, aiding, or abetting any other person or business entity in engaging or in performing any of the activities referred to in subparagraphs 1 through 3 above.

    D.    Entrust be required to deliver to INTRUST for destruction all marketing and promotional materials, signs and the like, and all other things possessed, used, or distributed by Entrust that contain the term "Entrust," whether alone or in combination with other terms and designs, including the Entrust Composite Mark.

    E.    The Court order the registration for the <entrustbankcard.com> domain name transferred to INTRUST and order the registrar and registry for the <entrustbankcard.com> domain name to take such action as may be necessary to effectuate the transfer of the registration for the <entrustbankcard.com> domain name to INTRUST; or, alternatively, that the Court order Entrust take down all web-based advertisements that Entrust created or caused to be created, including, but not limited to, Entrust's website at <entrustbankcard.com> and Entrust's Facebook page, cancel its registration for the <entrustbankcard.com> domain name, and be permanently enjoined from registering or using the <entrustbankcard.com> domain name.

    F.    Entrust be required to compensate INTRUST for any and all damages suffered by INTRUST as a result of the actions complained of herein.

    G.    INTRUST have all remedies available to it under § 35 of the Lanham Act, 15 U.S.C. § 1117.

    H.    The Court award INTRUST its costs and attorney's fees as may be permitted by law.

13

I. INTRUST have such other and further relief as may be proper, just, and equitable.

## DEMAND FOR JURY TRIAL

INTRUST demands a jury trial as to all issues triable by jury in this action.

## DESIGNATION OF PLACE OF TRIAL

INTRUST designates Wichita, Kansas, as the place of trial of this matter.

Dated: March 5, 2013.

           Respectfully submitted,

           By /s/ Shannon D. Wead
             Shannon D. Wead, #18301
             FOULSTON SIEFKIN LLP
             1551 N. Waterfront Parkway, Suite 100
             Wichita, KS 67206-4466
             316.267.6371
             866.347.9611
             swead@foulston.com
              *Attorneys for Plaintiff*